IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

KEITH SMITH,                        )
      Plaintiff,                      )
                               )
           v.                       )       Civil No. 3:15cv282 (JRS)
                               )
CAROLYN W. COLVIN,                  )
Acting Commissioner of Social Security,   )
      Defendant.                      )
_____)

REPORT AND RECOMMENDATION

On June 1, 2011, Keith Lamont Smith ("Plaintiff") applied for Social Security Disability

Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act

("Act"), alleging disability from chronic obstructive pulmonary disease ("COPD"), Hepatitis C,

nerve damage in the legs, arthritis, high blood pressure and carpel tunnel syndrome, with an

alleged onset date of June 1, 2011.  The Social Security Administration ("SSA") denied

Plaintiff's claims both initially and upon reconsideration.  An Administrative Law Judge ("ALJ")

denied Plaintiff's claims in a written decision and the Appeals Council denied Plaintiff's request

for review, rendering the ALJ's decision the final decision of the Commissioner.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g),

arguing that the ALJ erred in assessing Plaintiff's residual functional capacity ("RFC").  (Mem.

in Support of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.")(ECF No. 11) at 4.)  This matter now comes

before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the

parties' cross-motions for summary judgment, rendering the matter now ripe for review.[1]  For the

reasons that follow, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF

No. 10) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 12) be

GRANTED and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

On June 1, 2011, Plaintiff filed an application for DIB and SSI with an alleged onset date

of June 1, 2011. (R. at 237, 247.)  The SSA denied these claims initially on December 19, 2011,

and again upon reconsideration on March 26, 2012. (R. at 118, 130.)  At Plaintiff's written

request, the ALJ held a hearing on November 14, 2013. (R. at 36.)  At that hearing, Plaintiff

amended his alleged onset date to January 1, 2012. (R. at 40.)  On December 17, 2013, the ALJ

issued a written opinion, denying Plaintiff's claims and concluding that Plaintiff did not qualify

as disabled under the Act, because Plaintiff could make successful adjustments to work that

exists in significant numbers in the national economy. (R. at 18-29.)  On March 6, 2015, the

Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final

decision of the Commissioner subject to review by this Court. (R. at 1.)

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court "will affirm the

Social Security Administration's disability determination 'when an ALJ has applied correct legal

standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v.*

*Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d

---

[1]     The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc.
R. 5 and 7(C).  In accordance with these Rules, the Court will endeavor to exclude any personal
identifiers such as Plaintiff's social security number, the names of any minor children, dates of
birth (except for year of birth), and any financial account numbers from its consideration of
Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to
only the extent necessary to properly analyze the case.

337, 340 (4th Cir. 2012)).  Substantial evidence requires more than a scintilla but less than a preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  To determine whether substantial evidence exists, the Court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).  In considering the decision of the Commissioner based on the record as a whole, the Court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)).  The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477.  If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the Court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The Social Security Administration regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (summarizing the ALJ's five step sequential evaluation).  To summarize, at step one, the ALJ looks at the claimant's current work activity. 20 C.F.R. § 416.920(a)(4)(i).  At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. 20 C.F.R. § 416.920(a)(4)(ii).  Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. 20 C.F.R. § 416.920(a)(4)(iii).  Between steps three and four, the ALJ must assess

3

the claimant's RFC, accounting for the most that the claimant can do despite his physical and

mental limitations.  20 C.F.R. § 416.945(a).  At step four, the ALJ assesses whether the claimant

can perform his past work given his RFC.  20 C.F.R. § 416.920(a)(4)(iv).  Finally, at step five,

the ALJ determines whether the claimant can perform any work existing in the national

economy.  20 C.F.R. § 416.920(a)(4)(v).

### III.  THE ALJ'S DECISION

On November 14, 2013, the ALJ held a hearing during which Plaintiff (represented by

counsel) and a vocational expert ("VE") testified.  (R. at 36-63.)  On December 17, 2013, the

ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act.  (R.

at 18-29.)

The ALJ followed the five-step evaluation process established by the Social Security Act

in analyzing Plaintiff's disability claim.  (R. at 19-20.)  At step one, he found that Plaintiff had

not engaged in substantial gainful activity since the alleged onset date.  (R. at 20.)  At step two,

he found that Plaintiff had the following severe impairments:  alcohol dependence, asthma,

COPD, gout, history of persistent arrhythmia with syncope, obesity, alcoholic peripheral

neuropathy/hepatitis C, obstructive sleep apnea, uncontrolled hypertension and bilateral shoulder

pain.  (R. at 20.)  However, the ALJ found at step three that Plaintiff did not have an impairment

or combination of impairments that meets or medically equals the severity of one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 21.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform light work with

further limitations.  (R. at 22.)  Plaintiff could only occasionally climb, balance, stoop, kneel,

crouch and crawl.  (R. at 22.)  He could never climb ladders, ropes or scaffold.  (R. at 22.)

Plaintiff needed to change position between sitting and standing at intervals of approximately

4

thirty minutes while remaining on task. (R. at 22.) As for nonexertional limitations, Plaintiff retained the capacity to use commonsense understanding to perform instructions provided in oral, written or diagrammatic form. (R. at 22.) He could perform a range of unskilled work at or below reasoning level three as defined in the Dictionary of Occupational Titles. (R. at 22.)

Given the above RFC, the ALJ found at step four that Plaintiff could not perform any of his past relevant work. (R. at 27.) Finally, at step five, the ALJ determined that Plaintiff could perform jobs existing in significant numbers in the national economy. (R. at 28.) Therefore, Plaintiff did not qualify as disabled under the Act. (R. at 29.)

## IV. ANALYSIS

Plaintiff, fifty-four years old at the time of this Report and Recommendation, previously worked as a driver, a laborer and a landscaper. (R. at 265, 270.) He applied for Social Security Benefits, alleging disability from COPD, Hepatitis C, nerve damage in his legs, arthritis, high blood pressure and carpel tunnel, with an alleged onset date of June 1, 2011, later amended to January 1, 2012. (R. at 40, 269.) Plaintiff's appeal to the Court alleges that the ALJ erred in assessing Plaintiff's RFC by failing to perform a function-by-function analysis, failing to recognize Plaintiff's hospitalization due to acute respiratory failure, failing to properly evaluate the opinions of a nurse practitioner and failing to include any limitation related to Plaintiff's bilateral median nerve compression. (Pl.'s Mem. at 4-9.) For the reasons set forth below, the ALJ did not err in his decision.

### A. The ALJ did not err in failing to perform a function-by-function analysis.

Plaintiff alleges that the ALJ failed to conduct a function-by-function analysis, thereby necessitating a remand. (Pl.'s Mem. at 6.) The ALJ found that Plaintiff had the severe impairments of asthma, COPD, persistent arrhythmia with syncope, peripheral neuropathy and

bilateral shoulder pain. (R. at 20.) However, the ALJ failed to include these severe impairments in the RFC. (Pl.'s Mem. at 6.) This omission, according to Plaintiff, constitutes reversible error. (Pl.'s Mem. at 6.) Defendant argues that the ALJ accounted for all of Plaintiff's credibly supported functional limitations, and that substantial evidence supports the ALJ's RFC assessment. (Def.'s Mem. at 14.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.902(e)-(f), 416.945(a)(1). In analyzing a claimant's abilities, the ALJ must first assess the nature and extent of a claimant's physical limitations and then determine the claimant's RFC for work activity on a regular and continuing basis. 20 C.F.R. § 416.945(b). Generally, the claimant shoulders the responsibility for providing the evidence that the ALJ utilizes in making his RFC determination; however, before determining that a claimant does not have a disability, the ALJ must develop the claimant's complete medical history, including scheduling consultative examinations if necessary. 20 C.F.R. § 416.945(a)(3). The RFC must incorporate impairments supported by the objective medical evidence in the record, as well as those impairments that have basis in the claimant's credible complaints. *Carter v. Astrue*, 2011 WL 2688975, at *3 (E.D. Va. June 23, 2011); *accord* 20 C.F.R. § 416.945(e).

Social Security ruling 96-8p instructs that the RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." *Mascio*, 780 F.3d at 636 (4th Cir. 2015) (citing SSR 96-8p). The Ruling further explains that the RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing

6

specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." *Id.* (citing SSR 96-8p).

The ALJ's failure to conduct a function-by-function analysis does not necessarily result in an automatic remand. The Fourth Circuit rejected a "*per se* rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636. Indeed, in light of *Mascio*, at least three district courts have found that in the absence of an explicit function-by-function analysis, the reviewing court "must assess whether the ALJ's RFC analysis considered the relevant functions, whether his decision provides a sufficient basis to review his conclusions, and, ultimately, whether substantial evidence in the record supports that decision." *Ashby v. Colvin*, 2015 WL 1481625, *3 (S.D.W.Va. March 31, 2015) (holding that ALJ did not conduct explicit function-by-function analysis of claimant's physical abilities, but sufficient evidence existed showing that ALJ analyzed the relevant function); *see also Scruggs v. Colvin*, 2015 WL 2250890, at *4 (W.D.N.C. May 13, 2015) (requiring remand because ALJ's decision did not address claimant's ability to complete tasks for a full workday); *Carver v. Colvin*, 2015 WL 4077466, at *10 (M.D.N.C. July 6, 2015) (recommending remand because ALJ neglected to assess claimant's ability to walk or stand for a full workday).

Here, the ALJ included a comprehensive review of the evidence supporting his RFC assessment. Contrary to what Plaintiff argues, the ALJ considered the severe impairments and explained how the evidence supports the RFC. (R. at 23-26.) With respect to Plaintiff's asthma and COPD, the ALJ noted that Plaintiff testified that his asthma had not caused him many problems. (R. at 23.) The ALJ also considered Dr. Nancy Powell's study of Plaintiff's lungs on November 1, 2011, revealing the lungs as clear to auscultation. (R. at 24.) The ALJ also considered respiratory examinations that showed Plaintiff's lungs clear to auscultation, non-

labored respirations, equal breath sounds, and symmetric chest wall expansion. (R. at 25.) Furthermore, the ALJ noted that Plaintiff's medical providers assessed his respiratory issues as stable. (R. at 26.) Despite several instances of hospitalization due to pneumonia and bronchitis, the symptoms had resolved each time with antibiotics and respiratory treatment. (R. at 26.) Consequently, the ALJ clearly considered Plaintiff's respiratory diagnoses of asthma and COPD in his narrative discussion of the evidence. And his analysis provides this Court with an opportunity to meaningfully review his decision to exclude explicit limitations related to Plaintiff's asthma and COPD.

Substantial evidence supports the ALJ's treatment of Plaintiff's asthma and COPD. Plaintiff denied having problems with his asthma or other respiratory issues during numerous doctor visits. (R. at 481, 624, 639, 792-93, 837.) Examinations revealed Plaintiff's clear lungs, non-labored respirations, equal breath sounds and symmetrical chest wall expansion. (R. at 482, 592, 606, 699, 795, 841.) Additionally, Plaintiff's COPD/asthma remained stable. (R. at 604, 606, 626, 630-31, 642, 699, 796, 841.)

Plaintiff similarly alleges that the ALJ improperly excluded Plaintiff's history of persistent arrhythmia with syncope. (Pl.'s Mem. at 6-7.) However, the ALJ noted that Plaintiff has not experienced any episodes of syncope since implementation of a pacemaker. (R. at 25.) He also noted that cardiac examinations documented a regular rate and rhythm without murmurs, rubs, gallops or lower extremity edema. (R. at 25.) This sufficiently explains why he did not include the syncope in the RFC limitations.

Substantial evidence supports the ALJ's decision not to include syncope in Plaintiff's RFC limitations. As the ALJ noted, Plaintiff had not experienced any syncopal episodes or arrhythmia since the implementation of a pacemaker in June of 2012. (R. at 439, 606, 616, 625,

628-31, 639, 699.) On April 25, 2013, Plaintiff underwent successful SVT ablation[2] after experiencing sudden onset tachypalpitations. (R. at 739-41.) On September 9, 2013, doctors noted that medications successfully controlled Plaintiff's SVT. (R. at 878.)

Plaintiff also alleges that the ALJ failed to consider Plaintiff's peripheral neuropathy and bilateral shoulder pain when assessing the RFC. (Pl.'s Mem. at 6.) However, the ALJ did consider the conditions and noted the conservative treatment of both on an outpatient basis with medication. (R. at 26.) He also noted that physical examinations remained grossly within normal limits. (R. at 26.) Therefore, the ALJ did not fail to consider Plaintiff's shoulder and neuropathy limitations.

Substantial evidence supports the ALJ's consideration of Plaintiff's bilateral shoulder pain and peripheral neuropathy in the RFC assessment. On February 15, 2012, Kim R. Sellergreen, M.D., found the plain films of both shoulders essentially unremarkable. (R. at 519.) She also noted a full range of motion for both shoulders. (R. at 519.)

On March 14, 2012, Lindsay E. Hickerson, M.D., found that Plaintiff had normal rotation and 5/5 strength. (R. at 521.) An x-ray revealed mild AC joint arthritis. (R. at 521.) Dr. Hickerson prescribed no pain medications. (R. at 521.)

On June 6, 2012, an exam by Gregory Hale, M.D., revealed a well-developed shoulder with no evidence of muscle atrophy. (R. at 479.) He noted 5/5 strength throughout, except for 4+/5 strength for external rotation. (R. at 479.) Injections provided Plaintiff about one month of relief from the pain. (R. at 478-79.)

---

[2]      Ablation consists of putting a catheter into place to deliver destructive electrical energy to an area. Dorland's defines SVT, or supraventricular, as "any regular tachycardia in which the point of stimulation is located above the bundle branches, either in the sinus node, atria, or atrioventricular junction; it may also include those arising from large reentrant circuits encompassing both atrial and ventricular sites." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 4, 1868 (32nd ed. 2012).

Despite a continuing assessment of alcoholic peripheral neuropathy, physical examinations between March of 2012 and May of 2013 failed to reveal any musculoskeletal or neurological abnormalities. (R. at 482, 495-97, 551, 557, 575, 625, 630, 641-43, 795, 841.) In January, April and May 2014, Plaintiff reported feeling well with no new complaints. (R. at 696, 792, 837.)

Plaintiff also alleges that the ALJ erred by failing to evaluate Plaintiff's hospitalization with acute respiratory failure. (Pl.'s Mem. at 7.) However, the ALJ did take this into consideration. The ALJ noted that the evidence demonstrated that Plaintiff's symptoms subsequently resolved without the need for a broncoscopy. (R. at 26.) Plaintiff's hospitalization records from that time period show that his symptoms resolved. (R. at 866, 886.)

Therefore, the record supports the ALJ's consideration of Plaintiff's asthma, COPD, persistent arrhythmia with syncope, peripheral neuropathy, bilateral shoulder pain and hospitalization when formulating Plaintiff's RFC. The ALJ gave a narrative discussion of the evidence and how it related to Plaintiff's complaints. The complaints that he found credibly supported by the record became part of the RFC. Thus, he did not err.

**b. The ALJ did not err by failing to consider the opinion of the nurse practitioner.**

Plaintiff alleges that the ALJ erred by failing to evaluate the opinion of nurse practitioner Stacy M. Jones when formulating Plaintiff's RFC. (Pl.'s Mem. at 7.) Specifically the ALJ should have evaluated Nurse Practitioner Jones' October 11, 2013 opinion wherein she opined that Plaintiff could not work. (Pl.'s Mem. at 7.) Defendant argues that Nurse Practitioner Jones' opinion does not necessarily deserve consideration. (Def.'s Mem. at 19-20.)

The regulations provide that the ALJ *may* also use evidence from "other sources" that do not qualify as acceptable medical sources, including nurse practitioners. 20 C.F.R.

§§ 404.1513(d), 416.913(d). Thus, the ALJ does not have to use evidence from an "other source." Certainly, the ALJ does not have to accept the opinion of an "other source" that opines on the ultimate issue of disability, as even a treating source's opinion on the ultimate issue deserves no weight. 20 C.F.R. §§ 404.1527(d), 416.927(d). Indeed, the regulations do not even consider an opinion on the ultimate issue of disability as a medical opinion automatically deserving consideration. *Id.* ("Opinions on some issues, such as [that you are disabled], are not medical opinions . . . but are, instead, opinions on issues reserved for the Commissioner.")

An ALJ does not need to explain his consideration of evidence from "other sources" that has no bearing on the determination of a disability. Social Security Ruling 06-03p instructs an ALJ on how to consider evidence from "other sources." It begins by stating that the Agency considers all relevant evidence in disability determinations, including opinion evidence from "other sources" who have seen the individual in their professional capacity. SSR 06-03p. Importantly, the Ruling does not dictate that the ALJ consider *all* evidence from these sources, only relevant evidence. *Id.* When distinguishing between what the ALJ must consider and what he must explain, the Ruling clarifies that the ALJ "should explain the weight given to opinions from these "other sources" . . . when such opinions may have an effect on the outcome of the case." *Id.*

The ALJ properly ignored the report from Nurse Practitioner Jones, because the report had no probative value. Ms. Jones produced a one page "Medical Report for General Relief and Medicaid" that Plaintiff argues deserves consideration. (R. at 264, Pl.'s Mem. at 7.) In this report, she simply listed his diagnosed conditions and checked boxes indicating that Plaintiff had a disability permanently rendering him unable to work. (R. at 264.) She gave no indication of the extent to which she had seen Plaintiff in her professional capacity. (R. at 264.) She offered

11

no objective findings or basis for her opinion. (R. at 264.)  As such, the ALJ had no medical opinion from Nurse Practitioner Jones to consider.  He had only Ms. Jones' opinion on the ultimate issue of disability.

Because she offered no medical opinion to consider, the report did not constitute relevant evidence requiring consideration.  It could not have had an effect on the outcome of the case.  Therefore, the ALJ did not err in failing to explain his reasoning for ignoring Nurse Practitioner Jones' report.

### c.  The ALJ did not err in failing to consider Plaintiff's bilateral median nerve compression.

Plaintiff's final assignment of error in the ALJ's RFC stems from the ALJ's alleged failure to consider any limitations related to Plaintiff's bilateral median nerve compression. (Pl.'s Mem. at 9.)  However, substantial evidence supports the ALJ's decision not to consider Plaintiff's median nerve compression in the RFC.

In support of this claim, Plaintiff points to a single visit with occupational therapist Stephanie Sands on March 29, 2012. (Pl.'s Mem. at 9, R. at 524.)  During this fifteen-minute visit, Plaintiff complained of numbness and pain in his hands on a level of 7/10. (R. at 524.)  Ms. Sands prescribed hand splints and therapeutic exercises. (R. at 526.)  With the splints and exercises, she gave Plaintiff a fair to good potential for achieving a decrease in pain by three points within two to three weeks. (R. at 526-28.)  Plaintiff sought no further specialized treatment.  Additionally, as discussed above, Plaintiff's physical examinations revealed no musculoskeletal or neurological abnormalities. (R. at 482, 495-97, 551, 557, 575, 625, 630, 641-43, 795, 841.)  Therefore, Plaintiff's argument that the ALJ erred in not considering Plaintiff's bilateral median nerve compression lacks merit.

The ALJ did not err in formulating Plaintiff's RFC.  Instead, the ALJ considered the relevant evidence, gave a narrative discussion of that evidence and included in the RFC all of Plaintiff's impairment that the evidence credibly supported.

V.     CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motions for Summary Judgment (ECF No. 10) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 12) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to the Honorable James R. Spencer and to all counsel of record.

**NOTICE TO PARTIES**

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____ /s/

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date:  December 31, 2015